UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:25-cv-21514

TERESA WILLIAMS, individually and as the Personal Representative of the Estate of Kevin Williams,

                Plaintiff,

v.

CARNIVAL CORPORATION, CARNIVAL CORPORATION & PLC, and CARINVAL CRUISE LINE,

                Defendant(s).

## COMPLAINT

Plaintiff, Teresa Williams individually and as the Personal Representative of the Estate of Kevin Williams, by and through the undersigned attorneys, hereby files this Complaint for Damages and Demand for Jury Trial and sues Defendants Carnival Corporation; Carnival Corporation & plc; and Carnival Cruise Line and alleges as follows based on personal knowledge and information and belief:

## THE PARTIES

1. Plaintiff Teresa Williams is an individual, an adult, and a citizen and resident of New York. Ms. Williams is the surviving spouse of Kevin Williams who was a citizen and resident of New York. Teresa and Kevin Williams were fare paying passengers on the *Venezia*, a cruise ship owned and/or operated by Defendants herein, pursuant to an executed contract between the Williamses and Defendants. Plaintiff Teresa Williams brings this action individually, and also

brings this action as the personal representative of the estate of her deceased husband.[1]

2. Upon information and belief, Defendant Carnival Corporation (together with Carnival Corporation & plc and Carnival Cruise Line, "Carnival") is a foreign for-profit corporation with its principal place of business in Miami-Dade County, Florida.

3. Upon information and belief, Defendant Carnival Corporation & plc is a foreign for-profit corporation with its principal place of business in Florida.

4. Upon information and belief, Defendant Carnival Cruise Line is a foreign for-profit corporation with its principal place of business in Florida.

5. At all relevant times, Carnival owned, operated, managed the cruise ship *Venezia*.

6. Upon information and belief, Defendants operate in tandem and maintain sufficient control over the day-to-day operations of the business related to the cruise ship *Venezia*.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1333 and the general maritime law of the United States.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this District. Moreover, the contract executed between Plaintiff and Defendants states that all disputes between the parties shall be litigated within this district.

## STATEMENT OF FACTS

9. Teresa Williams, her husband Kevin Williams, and their son were passengers on the Carnival Cruise ship *Venezia* in April 2024.

10. Early in the morning on April 1, 2024 around 3:00 AM, Mr. Williams woke up

---

[1] Teresa and Kevin Williams were married in 2007. Ms. Williams is in the process of being appointed as the personal representative of Kevin Williams's estate.

2

feeling ill as he was struggling to breathe, shaking, and sweating profusely. Mr. Williams was subsequently taken to the ship's medical center in a wheelchair.

11. When Mrs. Williams met her husband in the ship's medical center about ten (10) minutes after he had arrived, there was just one doctor tending to him. Mr. Williams' breathing stopped while under the sole doctor's care. While the sole doctor was able to get his breathing to restart, only after he was intubated out of precaution did more doctors arrive to assist Mr. Williams' critical condition.

12. The doctors then informed Mrs. Williams that her husband would have to go to a hospital once they arrived in the Dominican Republic later that morning.

13. Prior to arriving in the Dominican Republic, the cruise staff told Mrs. Williams to pack her family's luggage so that they could stay in the Dominican Republic with her husband.

14. While packing, Mrs. Williams received approximately five calls from Carnival, each callously demanding that she pay her husband's $222 invoice immediately and prior to disembarking from the ship, despite both the urgency of the situation and the fact that Mr. Williams was in critical condition.

15. Once they arrived in the Dominican Republic around 8:00 AM, Carnival did not provide Mrs. Williams or her family with any assistance and instead directed them to a port agent, who took them to a private hospital nearby.

16. Upon arriving at the hospital, hospital staff demanded that Mrs. Williams pay $10,000 up front in order for her husband to be treated.

17. As Mrs. Williams was unable to wire the money instantly to the private hospital, they were forced to go to a decrepitly run-down public hospital instead.

18. After Mr. Williams was admitted to this local hospital, Mrs. Williams booked a

nearby hotel for her and her son and contacted the United States Embassy for assistance getting her husband back to the country.

19. The embassy questioned why an airlift did not pick her husband up directly from the cruise ship, and Mrs. Williams told them that the cruise staff had never informed her this was an option.

20. Despite the staff not offering this option to Mrs. Williams and her husband, both of whom are black, it is well known and publicized that the *Venezia* has arranged airlift rescues for other passengers in critical condition who upon information and belief were not black, including on or about May 4, 2024 and October 6, 2024.

21. Additionally, Carnival arranged for an airlift of another sick passenger traveling on the Vista on November 14, 2024, and several other instances on its fleet prior to April of 2024.

22. On April 2, 2024, Mrs. Williams spoke with the United States Embassy and was in the process of arranging an airlift to take Mr. Williams from the Dominican Republic back to the United States.

23. However, when the U.S. Embassy followed up, the local hospital informed them that Mr. Williams had passed away that morning (April 2, 2024) at 2:10 AM. No one had notified Mrs. Williams.

24. From the time the Williams family departed the *Venezia*, through the time Mr. Williams died, not one staff member from Carnival contacted or attempted to contact Mrs. Williams or her family by any means whatsoever.

25. The day after her husband died, Carnival finally reached out to Mrs. Williams, offering their condolences, nicer hotel lodging, and flight travel back to the United States.

26. However, Carnival did not reimburse Mrs. Williams for the costs of the hotel where

they had been staying.

27. Additionally, Carnival would not refund the $400 deposit Mrs. Williams had placed on her room, and they still required her to pay the $222 invoice.

28. Carnival failed to arrange an airlift for Mr. Williams during a medical crisis or otherwise ensure that he received appropriate and timely medical care. An airlift would have enabled timely access to critical care and potentially saved his life.

29. Due to Carnival's actions and negligence, Mrs. Williams and her son were traumatized and suffered severe emotional distress in addition to financial damages.

## Count I: Violation of 42 U.S.C. § 1981

30. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth fully herein.

31. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her and her husband's race and color in violation of 42 U.S.C. § 1981 ("Section 1981") by denying her the same terms, conditions, benefits, and/or privileges available to cruise passengers of other races, including but not limited to failing to offer Plaintiff adequate notice regarding her husband's condition, refusing to provide and/or coordinate adequate medical treatment, forcing them to depart the cruise while Mr. Williams was in critical condition but requiring immediate payment of the invoice, and failing to offer, notify the Williams of, or coordinate any medical transportation.

32. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff suffered and continues to suffer monetary and/or economic harm, as well as severe emotional and psychological distress for which she is entitled to an award of compensatory damages.

33. Defendants' unlawful and discriminatory actions were intentional, done with

malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages. In addition, Defendants are liable for interest, attorneys' fees, and costs.

### Count II. Violation of Florida's Civil Rights Act

34. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth fully herein.

35. The Florida Civil Rights Act ("FCRA"), 2024 Fla. Stat. § 760.08 et seq., prohibits racial discrimination in places of public accommodation.

36. 760.02(11) defines "public accommodations" to "mean[] places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments. Each of the following establishments which serves the public is a place of public accommodation within the meaning of this section:

> (a) Any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than four rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his or her residence.
>
> (b) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment, or any gasoline station.
>
> (c) Any motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment.
>
> (d) Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

6

37. Defendants' cruise ship *Velencia* constitutes a place of public accommodation within the meaning of the FCRA.

38. As set forth above, Defendants discriminated against Plaintiff on the basis of her and her husband's race and color in violation of the FCRA by denying her the same terms, conditions, benefits, and/or privileges available to cruise passengers of other races, including but not limited to failing to offer Plaintiff adequate notice regarding her husband's condition, refusing to provide and/or coordinate adequate medical treatment, forcing them to depart the cruise while Mr. Williams was in critical condition but requiring immediate payment of the invoice, and failing to offer, notify the Williams of, or coordinate any medical transportation.

39. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff suffered and continues to suffer monetary and/or economic harm, as well as severe emotional and psychological distress for which she is entitled to an award of compensatory damages.

## Count III: Wrongful Death under Florida law

40. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth fully herein.

41. Florida law provides that "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances." 2024 Fla. Stat. § 768.19.

42. As set forth above, Defendants failed to arrange an airlift for Mr. Williams during

a medical crisis or otherwise ensure that he received appropriate and timely medical care. An airlift would have enabled timely access to critical care and potentially saved his life.

43. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe emotional pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of companionship, monetary loss, medical and funeral expenses, and loss of net accumulations of the Estate. These losses and injuries are permanent and continuing in nature. Accordingly, Plaintiff seeks recovery for all available damages and remedies set forth in Florida's Wrongful Death statute.

## Count IV: Negligence

44. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth fully herein.

45. At all relevant times, Defendants had a duty to use reasonable care under the circumstances, for the safety of the passengers of the *Venezia*, including Plaintiff and her family members, and ensure that passengers experiencing urgent health issues either receive adequate medical care on board the ship or receive timely transportation adequate medical care facilities.

46. Defendants breached its duty of care owed to Teresa Williams, as her husband's spouse and a passenger of the *Venezia*, when it did not inform the Williams of the option for a medical airlift nor attempt to coordinate one, as set forth more fully above.

47. Defendants also breached its duty of care owed to Teresa Williams, as her husband's spouse and a passenger of the *Venezia*, by forcing the Williams to disembark from the cruise ship and seek medical care at port.

48. Defendants also breached its duty of care owed to Teresa Williams, as her husband's spouse and a passenger of the *Venezia*, by delaying medical treatment for Mr. Williams

8

by forcing the Williams to pay their invoice before disembarking from the cruise ship, while Mr. Williams was in critical condition.

49. Defendants also breached its duty of care owed to Teresa Williams, as her husband's spouse and a passenger of the *Venezia*, when it failed to timely inform her of her husband's death.

50. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer severe emotional pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of companionship, monetary loss, medical and funeral expenses, and loss of net accumulations of the Estate. These losses and injuries are permanent and continuing in nature. Accordingly, Plaintiff seeks recovery for all available damages and remedies.

## Conscious Pain and Suffering

51. As set forth above, Defendants' negligence was the direct and proximate cause of the harm caused to Plaintiff and the decedent, Kevin Williams.

52. Kevin Williams, was conscious and suffered pre-death pain, suffering, and agony before he ultimately died.

53. Theresa Williams observed her deceased husband's pre-death pain, suffering, and agony and suffered agony watching her husband suffer.

54. Accordingly, Plaintiff seeks recovery for all available damages including, but not limited to severe emotional pain and suffering and mental anguish. These losses and injuries are permanent and continuing in nature, and Plaintiff will continue to suffer them in the future

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief and award to Plaintiff:

    i.    Compensatory damages;

    ii.    Reasonable costs and attorneys' fees;

    iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

    iv.    Any and all other relief that this Court finds necessary and appropriate.

Dated: April 1, 2025

Respectfully submitted,

/s/ *Christopher M. Lomax*
Christopher M. Lomax Esq.
Florida Bar No. 56220
Chris@LomaxLegal.com
**LOMAX LEGAL PLLC**
95 Merrick Way, 3rd Floor
Coral Gables, FL 33134
Telephone: 305.582.6506

Adriana Alcalde Adriana Alcalde
Florida Bar No. 609331
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
(917) 591-2875
aalcalde@eandblaw.com

Attorneys for Plaintiff